The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right, we'll begin with the United States v. Thompson. Ms. Leaston, is it? We're glad to hear from you. May it please the Court, Jenny Leaston on behalf of the appellate, Shawntanna Thompson. Your Honors, a crime that can be committed with less than recklessness is not a crime of violence under the sentencing guidelines. And it doesn't matter whether we're talking about the force clause or the enumerated offenses clause or, as we'll be discussing today, the residual clause. In all of its filings, in these voluminous filings, the government has not identified a single case by any court anywhere applying any clause that holds that a crime that can be committed with less than recklessness is a crime of violence. And, of course, this Court has already specifically held in cases such as Martin and Roseborough and Rivers and Peterson and Benson and Garcia and on and on, that crimes that can be committed with less than recklessness do not qualify as crimes of violence. The Sentencing Commission itself has indicated that to qualify as a crime of violence, the offense in question should be purposeful. On August 1, 2016, the Sentencing Commission amended the crime of violence definition and removed the residual clause. But they didn't do just that. They revised the enumerated offenses. And one of the enumerated offenses that they revised was manslaughter. They removed manslaughter and revised it to put voluntary manslaughter. And the Sentencing Commission explained that they did this because involuntary manslaughter would not qualify. I'm just not sure that the government would take issue with that. But let's assume that you're right, that it requires at least recklessness. The government's argument, as I understand, is not with that general proposition. But when you look at the North Carolina statute, it reflects at least recklessness or intentionality. I disagree, Your Honor. The North Carolina courts have specifically said that North Carolina assaults can be committed through culpable negligence, through such offenses such as a drunk driving accident or the mishandling of a firearm. Well, I guess you're not disagreeing that it can be either or proposition. It can be committed recklessly, but it can be committed with some intent less than that. Absolutely. And that's the point, right? Yes, Your Honor. Yes, Your Honor. And so because North Carolina assault broadly encompasses these different levels of intent, including culpable negligence, which this court in Peterson and in Benson specifically said is less than recklessness, then the statute itself is overly broad. And so it doesn't meet the purposeful standard under Begay, which is the threshold inquiry in the case under the residual clause. Now, the government is taking issue with the ordinary case approach and saying that, well, it doesn't matter if some North Carolina assaults can be committed through negligent or reckless conduct. The fact is is that most of them are committed intentionally, and so it does fall under the ordinary case approach because the typical case is committed intentionally. Intentionally, excuse me. But that argument... As a practical matter, is it likely that when you look at the North Carolina statute, that serious bodily injury, it's defined here as permanent disfigurement, coma, permanent or protracted condition that causes an extreme pain. As a practical matter, how likely is it that those kinds of injuries would be negligently inflicted? Well, Your Honor, of course, it doesn't matter the degree of injury. The court in Begay said that even if the negligent homicide is not going to qualify under the residual clause, even though there's a 100% chance of an injury. Well, of course it matters as to the degree of injury because the greater the degree of injury, the less the likelihood that there would be any negligent infliction. Well, a drunk driving accident could result in very serious injuries, Your Honor, and, of course, in State v. Jones, the Supreme Court of North Carolina recognized that assault with a deadly weapon inflicting serious injury can be committed through drunk driving accidents, or we also have mishandling of firearms. Now, I agree with you that probably most North Carolina assaults are committed intentionally, but this court has specifically rejected the idea that under the residual clause, you're going to do this sort of measuring and you're only going to look at to see whether most of them are committed in the ordinary case intentionally. The first time this court... Well, of course, under Duenas-Alvarez, we do have to look at how most crimes are committed because what that case says is that you have to take a common sense approach and you have to look at what actually is happening, and even if something is theoretically possible, it has to be actually somewhat likely. So two responses to that, Your Honor. First, the categorical approach, which is what we have to apply here, is not taking in a sort of a common... It's not a common sense inquiry under the categorical approach. And second, we, unlike many other defendants in Burns-Johnson and Reed and Doctor and several other cases before this court, we're not relying on our legal imagination here. We're not indulging in hypothetical scenarios. We're looking at North Carolina case law and looking at North Carolina cases in which real people have been convicted of assault inflicting serious bodily injury based on no more than negligent conduct. We have, for example, the case of Mitch and P. Gaskell, which involved a man picking up a gun that he thought was unloaded and then the gun accidentally discharges, and the jury specifically rejected the theory of intent and said that this was negligent conduct. That was specifically assault... So is there any species of assault in North Carolina that's a crime of violence? Your Honor, so this court... I believe so, Your Honor. I believe so. I think there are different... I believe there may be different... And I haven't looked into this. But there may be assaults that do have a specific intent. I'm asking you if there is a species of assault in North Carolina law that you would say is actually a crime of violence. Your Honor, I haven't fully investigated that. So the answer is no. Your Honor, this court... I thought there was assault by strangulation. The court found that that was an assault, a crime of violence. Because it required specific intent. And there also recently this court in an unpublished decision said that assault inflicting serious injury with intent to kill, which requires a specific intent, would qualify. It's kind of unusual that a state's code would have this lacuna to the extent that no species of assault, even the most aggravated species of assault, would possibly be categorically a crime of violence. I haven't come across that. And it seems an odd thing for the North Carolina legislature to have intended. In other words, all of these crimes, whether it be robbery or whether it be assault, they have an ordinary variety, ordinarily punished by misdemeanor or what have you. And then they have an aggravated variety. And I thought that kind of a plausible line we were drawing on these crimes, such as robbery and assault, was between the sort of normal variety, which is not a crime of violence, and the aggravated variety, which was. And the guidelines, the sentencing guidelines, the commentary on the sentencing guidelines would seem to indicate that the aggravated variety, as opposed to the normal variety, was indeed a crime of violence. Well, North Carolina certainly is unusual, Your Honor. I agree with you. I've never seen it. Is there any other state that we can say that no variety of assault, no matter how? Because in Johnson, what they were concerned about was having a nominal touching or something be a battery crime of violence. It would come a long way, I guess, from that.  that were crimes of violence. I do think that some particular ones will, but not this one. This is the problem that I'm trying to wrestle with and I would appreciate your help with. And that is that we know, from recent Supreme Court law, that we apply the ordinary case analysis to determine the degree of risk, right? Correct. Why would we not do it when we're also determining whether it's similar in kind? I mean, it seems just very odd to me to use a different kind of analysis. Well, maybe your answer is, well, we can do it and I still win. But if your answer is, don't do that, tell me why. No, my answer is not. I'm not saying that the ordinary case approach does not apply to the big A analysis here. I'm simply saying that this Court has twice rejected the notion that you would look to all of the crimes broadly and say, well, because simply most of them are committed intentionally. I mean, it seems to me that we're dueling with words then. Most, if most of them do something, then the ordinary one would do something. So in Roseboro, Your Honor, this Court looked at South Carolina's blue light statute, running away, evading a police officer. The government made this exact argument. It said that because most of the South Carolina violations are intentional, then the ordinary case must be that they are intentional and fall under that. And this Court specifically rejected that argument and said, no, you have to look to the subset. If you know that the crime can be committed without purposeful conduct, you have to look to the subset of ones that can be committed negligently and then determine whether that is a purposeful crime. Now, Judge Niemeyer dissented on that very point. He disagreed with that analysis. I mean, the Supreme Court keeps changing the rules here, if you will. This argument was made again in Martin, Your Honor, in 2014, and Judge Diaz was on that panel. And this was also the government's argument and the topic of the dissent in Martin was that just because the Court didn't look into whether fourth-degree burglary in Maryland, whether most of them were committed intentionally, because some of them could be committed negligently, they did not cast the victim as a purposeful injury. Well, that's where I started out with you. If we use what the most recent Supreme Court has told us to do, which is to use the ordinary case, if we do that with respect to degree of risk, why don't we do it with respect to the similar in kind? You do do it. I don't buy the government's argument that the recent Supreme Court case overruled Martin, but it seems to me that if Martin's decided today, it has to be decided with that in mind. And both Martin and Roseborough absolutely applied the ordinary case approach to both of those. In fact, they applied that test. To the analysis of the degree of risk to the ordinary? The ordinary case approach to the similar in kind approach. They absolutely applied that approach. Okay, but what about to the degree of risk? Well, they actually found that the degree of risk passed the degree of risk. It seemed to me that if you tell me that Martin applied it to the degree of risk but not to the similar in kind, it went to a wholly different analysis. Maybe that is what we're supposed to do, but I'm asking you. I don't think that's what Martin did. And you're saying it did, and that's your response. Is that what you're saying to me? That was specifically the point of the dissent. Well, the dissent in the majority opinion is the majority opinion. I think that's the approach taken by all the courts, Your Honor, in the United States, that purposeful, the threshold inquiry is whether or not the crime is purposeful. But most of the courts in the United States, most of the circuits, don't follow that particular skew in Begay. We're by ourselves there. I mean, maybe correctly. They seem to think that subsequent cases have moderated Begay, if you will. Do you disagree with that? I mean, there are a whole raft of cases. I have been unable to find any case under applying Begay to which a court has found that a crime of less than recklessness would qualify under the residual clause under the Begay analysis. Your Honor, let's continue here. This is an intense statute. And they cite the two cases of Shannon Williams and Nathaniel Williams. They talk about an intentional assault on another person. And, in fact, there are some other North Carolina court of appeals cases that describe the offense as an intentional assault. I'm just wondering, in addition, just in terms of likelihood, how likely is it that the kinds of permanent disfigurements, coma, extreme pain, loss of function of any bodily member or organ, how likely is it simply as a practical matter that that's going to be committed negligently? My time has expired, Your Honor. May I answer? So that intent, of course, can be implied through culpable negligence. And as a practical matter, that those sort of injuries can be committed just as easily through negligent behavior as through intentional behavior, such as a drunk driving or mishandling of firearms, which North Carolina case law clearly shows. We have examples of those in North Carolina case law. Drunk driving situations seem to be their particular genre of their own and seem to be handled through separate provisions of the criminal code. Are they not? No, Your Honor. North Carolina drivers can be charged with assault for a drunk driving accident. What's your leading case? State v. Jones, Your Honor, where the defendant was involved in a drunk driving accident and was charged not only with assault with a deadly weapon inflicting serious injury, but also first-degree murder. Was he charged under 1432A? No, Your Honor, but there would be nothing to prevent the state. I'm not asking you whether there's anything to prevent it or not. What I'm suggesting is that you've got a number of North Carolina cases describing this as an intentional assault on another person. And when I asked you what your leading case was that showed this could be inflicted through criminal negligence, the most you could give me was a theoretical possibility of a drunk driving accident. And then we started talking about it, and I was asking you whether your leading cases involved people that were charged under 14-32A. And the answer to my question was no. And what I'm looking for in terms of a realistic approach to this problem is cases where this provision has been applied by the North Carolina courts to convict someone on a theory of less than recklessness and negligence. Now, I haven't heard that. You've been up here for 20 minutes. And I haven't heard that case yet. Do you have that case? Specifically for assault inflicting serious bodily injury, we have the case of Mitch and V. Gaskell, which involved mishandling accidental discharge of a firearm where the jury specifically found that the conduct was only negligent. That was a charge under 14-32A? Yes, Your Honor. How many of those are there? Specifically a bad offense. Obviously, it's very difficult sometimes to... What we can only do at this point is look at what North Carolina case law shows us and tells us. There are, of course, thousands and thousands of cases going on in the North Carolina Superior Courts. You get a very skewed view of when you only look at appellate cases because, of course, they are naturally very limited in number. I understand the skewed view, but that's thrown off all the time when people come up with cases and they say, well, there are all these cases in the primary courts of record. They just haven't been reported yet. But I wish the answer were more concrete than that because in the absence of much, if any, case law, you can get some guidance from the... I mean, there are North Carolina cases that describe this as an intentional crime. They exist. And they're from the North Carolina courts, and they describe it as an intentional crime. That can be inferred through a couple of negligences. But when you combine that North Carolina case law with the wording of the statute, and you ask yourself commonsensically as opposed to theoretically, how likely is it that negligent behavior is going to result in the protracted loss of impairment of any bodily member or permanent disfigurement or coma or whatever, you come to the conclusion that, yes, theoretically it could be done that way, but in the ordinary case, no. And, Your Honor, we would just say we have cited many cases in our briefs. These are real people. If Mr. Gaskell comes into federal court, if he's found with a gun tomorrow and is charged with a 922G offense, he will come into federal court tomorrow, and he will face the exact same sentencing enhancement as Mr. Thompson based on an assault that was only negligent. Your Honors, I know my time has expired. I was looking, trying to read your discussion of Mitcham v. Gaskell in your brief as you're talking. It's never a good thing to do, but anyway, I am trying to do that. I noticed at least part of it was a civil action. Was there a criminal action first? Yes, Your Honor. Mr. Gaskell pled guilty to assault inflicting serious bodily injury, and he did receive an active sentence. And when he tried to get relief from that sentence and from that conviction on the basis that the assault was only negligent, he was told that, no, assaults are intentional but that the intent can be inferred through culpable negligence.  Thank you, Your Honors. When we talk about criminal negligence as opposed to just ordinary negligence, when we talk about criminal negligence, don't we get into the territory of, I think that we're letting labels guide us a little too much here about, oh, this could be committed by criminal negligence. But criminal negligence is sort of different from your ordinary car accident or what have you. Criminal negligence is really on a par with recklessness. And it manifests an indifference to risk. And that's where we get back into Voisin territory. And so you can't really resolve this by fastening on the label criminal negligence because that's, as an aggravated assault statute implies, criminal negligence is something different from just a mistake. It really is, in point of fact, recklessness. And it really does involve the very thing that the Supreme Court was concerned about in Voisin, which was the purposeful and reckless indifference to risk, which I would submit to you, someone that goes and gets completely loaded and drunk, that might be seen as an indifference to risk. When you go on the road and you're plastered, you know the risk. And so I just wonder whether, in reality, given the North Carolina cases, given the language of this statute, whether we can just part the seas and have this stark dividing line based on some label we've slapped through, when in reality we're talking about the very thing the Supreme Court was in Voisin. I think Your Honor understands our point exactly. And to further on that, North Carolina has said precisely what the difference between ordinary negligence and culpable negligence is, and it matches almost word for word with Voisin. What the North Carolina Supreme Court has said is that ordinary negligence is based on the theory that the person charged with the conduct should have known the consequences, whereas culpable negligence rests on the assumption that he knew the probable consequences but was intentionally, recklessly, or wantonly indifferent to the results. That's the definition. And ordinary negligence is not enough for an assault. You must have culpable negligence. It sounds like reckless conduct. Is there a difference? I think there's not. North Carolina doesn't have recklessness as a mens rea. We don't have it. A lot of states, about 35, have adopted a model penal code reckless definition with their mens reas. It makes sense. It's nice and consistent. North Carolina never did that. And that's important because this is North Carolina's recklessness mens rea. I would also note it was adopted, the earliest case I could find on this definition was from the 20s. So we're talking four decades before the model penal code was ever even written. So the fact that they use slightly different words to define these definitions, it's essentially meaningless unless you're going to assume that these people were all in the same room, which they never were. And so the other case that I would commend to the court, and we quoted this in our brief, is Steve versus Mundy. And this was a case where a person fell asleep while driving, hit someone, was charged with manslaughter for doing so. And the court specifically said, just falling asleep while driving is not culpable negligence. We would need to know, and I'm quoting from it, whether the operator, because of drowsiness, previous tiring activities, or other premonitory symptoms of sleep, became aware of the likelihood of falling asleep but continued to operate the motor vehicle under circumstances of insane thoughtless disregard, and so on. So in Voisin, the court talked about, and this is a quote from Voisin, the word use does not demand that the person applying force have the purpose or practical certainty that it will cause harm as compared with the understanding that it is substantially likely to do so. I mean, these are apples to apples right here. Bruce, can I ask you a question? Do you still think that the similar in contest has any continuing relevance in light of the legal landscape as we now know it? In light of the, I'm sorry, the second question. In light of the legal landscape as we understand it. I think the Supreme Court came very close in Johnson to just straight up saying that. Because I'm trying to reconcile this, what you're proposing, with the result in Martin. So if you can help me with that. I think Johnson helps to clear that up. I think in your concurrence in Martin, Judge Diaz, you really grasped on to the fact that it was unclear after Begay. I don't know that I grasped on to much of anything other than the fact that it was unclear. The uncertainty was where I was going. It was really unclear whether Begay would even apply in that case. I think we now know because of Johnson 2 that it would. Because Johnson 2 says, for starters, it confirms what some folks thought Sykes said, which was that the purposeful, violent, and aggressive test for the residual cause does not even apply to a crime of the mens rea of anything above recklessness. The burglary crime in Martin was really a strange crime. Whether or not it was applied correctly, the analysis was applied correctly in Martin, because of what the underlying crime is, does the Martin holding, the Martin analysis, still stand? Now you say that the Supreme Court overruled it in Johnson. I don't think that's true. But maybe, as Judge Diaz was suggesting, the legal landscape has just moved on for some reason. But what we're looking for, since we're just a panel here, is a way to reconcile Martin, which is circuit law, with the holding that you wish. We can't overrule Martin as a panel. That courses out. I don't think you have to do that. And I certainly hear what you're saying, Judge Motsen. Here would be my response. In 2010, this court in Harmon, which was well before Martin, described the application of the purposeful, violent, and aggressive test, and said that it asks, quote, whether the crime typically involves the type of purposeful, violent, and aggressive conduct that would support an inference that this offender would be more dangerous. Well, Begay itself says that. I think you should apply Begay and Harmon. To the extent there's a conflict between Harmon and Martin, Harmon would control, because it's the earlier published decision of this court. To the extent that there's a conflict between Begay or Johnson's discussion of Begay and Martin, you would apply Johnson and Begay, because they're Supreme Court cases. And to the extent my earlieró Earlier, I understood you were trying to make a distinction with respect to the mens rea. Right. I was going to. And, Judge Motsen, I think you suggested you didn't think that was much to rely on. I think it's stated in our brief, if the court doesn't agree, I don't think you have to go with us on this. So one would be that, in Martin, you didn't even need to apply Begay. We now know. But even if you say, we did need to apply, or we can't overrule tható Well, Begay isó We're stuck with that. The analysis in Martin is correct. Then I think what I would note in Martinó And my colleague's right that the dissent does point out this problem, but the majority opinion in Martin doesn't actually address what we're debating in this case today, which is, should you expressly apply the ordinary case approach? Should we first determine whether the ordinary case of this crime is purposeful, or do we just throw it out because it's possible to commit it without? And it didn'tóI've read this opinion now so many times. I don't see it as addressing that question. You could say it impliedly just didn't apply that test, but I think it's a lot different than if this court had a holding that said straight out, we don't care if it's possible toóif it's possible to commit it not purposefully, then it's out. I don't think this court has a case that says that. But Johnson, Johnson 2, I think is very clear. Before you get there, so you would say that even though the case that the appellant cites to us, that we just talked about in great detail in the reply brief, that's the single and only case, and therefore the ordinary case in North Carolina is not covered? Is that what you would say? I would go further. I am shocked that the defendant wants to talk about Mitchell v. Gaskill because it goes the other way. There is no case in North Carolina that supports the proposition that assault inflicting serious bodily injury can be committed with culpable negligence. I've read them all. And here's what MitchumóMitchum is a fascinating saga, but Mitchum, of course, as you identified, Judge Motz, it's a tort case. It wasn't a criminal case. But there was an underlying criminal case. Which he had pled guilty to, so there was no issue about his mens rea in that case. And in theónow, this was a case where Mitchum was suing over what he claimed was an intentional assault. It was a heated argument. It wasn't an accidental discharge. So you're saying there's no case anywhere that has applied a culpable negligence theoryó To this crime? Not that I have found. To this particular crime. In North Carolina. But can you finish up telling me about this case in North Carolina? Sure. And I would commend to the courtóit's a fascinating saga. Don't worry. We'll read it. It's great. So Gaskill was arguing that he intentionally shot Mitchum in self-defense. He didn't make a self-defense claim. He needed it to be intentional. And so he wanted to rely on his conviction for AISBI in order to prove intent. The judge wouldn't let him do it. He failed to preserve that issue on appeal. It didn't get addressed. I believe he may have tried in a habeas proceeding to challenge the intent for his guilty plea, but the court wouldn't really address that issue either. But what happened next is what's most fascinating. So Gaskill decides he wants to get the money from his insurance company for the tort suit. And nationwideóin this case, we cited it in our briefónationwide mutual insurance v. Gaskill. It's at 626 Southeast 2nd, 876, where the nationwide insurance said, We're not paying. You have a provision in your policy that excludes intentional conduct. It was AISBI. And the North Carolina Court of Appeals said, That's correct. This is an intentional crime. That's why I'm shocked that the defendant wants to talk about that case. And if that's the case for the defendant to hang his hat on as the example of culpable negligence for this crime, we'll take it because I've read all of the other ones. And I want to back up and say to you what I was going to start withógood morningóand say, May it please the court, you know, this crime in North Carolinaóassault, inflicting serious bodily injuryó this is the crime that they charge when you beat someone to within an inch of their life. And I mentioned earlier, I've read all these cases. I read it originally to see if you could commit this crime with culpable negligence, and I didn't find any. I have a giant Excel spreadsheet of all these cases. And I didn't find any. But, you know, I also learned that this crime is just unquestionable. You're making an argument in the alternative, aren't you, because you're saying that there aren't any North Carolina cases doingófinding this under a theory or convicting under a theory of culpable negligence. But I also understood you to say that culpable negligence is a level above just ordinary negligence. That'sóI'm making both of those arguments. You're making them both. And the reason is, Your Honor, the implications of this case, it may not on its face appear, but they're huge. And they're huge because this court will have the opportunity to decide if Bozzian applies across the circuit to the force clause. And that's a major important question right now. Let me ask you this. In your briefing, you seem to indicate one of sort of three different theories under which we could find it a crime of violence. One is aggravated assault was actually listed in the commentary. And then the second theory was that it satisfied the force clause because you couldn't commitóI mean, you couldn't cause permanent disfigurement, coma, et cetera, without at least the application of physical force against the person of another. That's correct. And then the third argument was under the residual clause in 4B1, which, of course, hinges on the serious risk language. But understand that's been repealed in the ACCA, so who knows what its fate is going to be under 4B1. But which of theseóshe says that all these theories don't matter because at the end of the road, allowing people to be convicted on negligence, you've, I think, done a good job in rebutting them. But what is youróyou've got all these different theories, the enumerated offense, force clause, residual clause. So just straightforwardly, though, what is your clenching theory? We think we went on on that the one I would recommend to you to decide thisó You think you went on on, okay. Is the force clause. And the reason that I say that, and the reason it's so incredibly important, and this case has such broad implications, you could hold that this particular assault can't be committed with culpable negligence. But if you decide that this crime cannot qualify, all of the other assaults, potentially with the exception of the ones with intent to kill, will fall. And I do want to make clear, because my colleague suggested, that perhaps the ones with intent to kill don't count. The Federal Public Defender for the Eastern District of North Carolina is making the argument right now in our courts, and I believe in this court, that those crimes don't count under this exact same clause. Well, they can make the argument, but it's a different case altogether, right? But I think your decision in this case will directlyó We've been able to parse out the various assault crimes in North Carolina. Doctor was an exception to the general rule, right? So we can distinguish. There will be a few. And we do think the ones with intent to kill have a specific intent requirement that kind of changes the whole inquiry. But to be clear, North Carolina has about 35 different assault crimes, and most of them, under this reasoning, would be out. Assault with a deadly weapon inflicting serious injury. Assault on a law enforcement officer. Assault on a handicapped person. They're all going to follow the same argument made here. So this case has a dramatic effect. And to turn to the force clause, with my remaining time, the Supreme Court in Guazin talked about what it means to use force, and they said use is the word that we care about. It's the only one we're analyzing here is the word use. And they made crystal clear that you don't have to intend the conduct in order to use force. All you need to do is be aware of the risk when you undertake the act. The 5th Circuit, the 8th Circuit, and the 10th Circuit have all applied Guazin beyond the misdemeanor crime of domestic violence provision that was at issue in Guazin. And the 5th Circuit went even further to explain that post-Guazin, guidelines provisions using the language has as an element the use, attempted use, or threatened use of physical force against the person of another are indifferent to mens rea. We concern ourselves only with whether Mendez's predicate conduct was volitional. That's the 5th Circuit and Mendez-Henriquez. And I would note that in order to get there, the 5th Circuit had to rule that Guazin superseded an en banc decision of that court. This court has actually already answered. So one of the questions, there's three things I've got to commit to. The first one is that Guazin applies beyond the misdemeanor crime of domestic violence provision. And as I'll explain, I think that's actually already settled by circuit, at least by where the law is at this point. The second is that it applies over prior case law of this court, and I'll talk about that. And the third is that it applies, even though this crime isn't listed as recklessness, it applies because culpable negligence is functionally the equivalent, and it requires what Guazin calls. Let me ask you this. Is your force clause argument that you could not inflict serious bodily injury with a coma and a protracted condition that causes pain and the rest, that you couldn't inflict those without at least the application or the attempted use or threatened use of force against another? I think it's a little different than that. I don't necessarily disagree with it, but what we're saying is, so the inquiry for the text of the force clause. Are you saying that it is your force clause argument that it simply involves a serious risk? No, it's the use of force, Your Honor. And the key of the force clause doesn't talk about risk. It talks about the use, attempted use or threatened use of physical force against a person of another. So the defendant's argument is, because you can, which we dispute, but because you can commit this crime with culpable negligence, it's not a use of force. It's not a use if you, they say, accidentally hit someone. It's not using force. And that's why Guazin is so important, because Guazin answered that question and said, you don't have to intend the force in order to use it. So what we say is, in all of these violent assaults, not just this one, but assault with a deadly weapon, et cetera, they involve the use of force, because they have to be committed with either actual intent, which is a use of force, or a volitional act undertaken with awareness of the risk, which is also a use of force. Either way, you're using force, and that is what the text, any good analysis begins with the text. And as I look at the text of this guideline, I would just note that there is not one word anywhere about men's right. How are you using the force? Are you using the force intentionally, or are you using the force recklessly, or what? At a minimum, even if you accept the defendant's argument about the characterization of this offense, at a minimum, the least culpable conduct would require you to undertake the action volitionally with awareness of the risk that the injury might occur. Force might be applied. That's not consistent with Vincent, though, right? I think, for starters, Vincent is a misdemeanor crime and domestic violence case, so to the extent that conflicts with Wazian, that's a one-to-one Wazian. But the line was just a lot broader. I think what Vincent said, and to unpack this, we've got to go back to Peterson, because Peterson said that it was not about any of this. It was about comparing North Carolina involuntary manslaughter to the generic crime of manslaughter, which the court determined required a men's right of recklessness. That was when the court said that culpable negligence is slightly less than recklessness. And so Vincent came along and said, well, at the least, a crime has to involve at least recklessness. I think the court's case law suggested it has to be more than that in order to be a use of force. All of that came before Wazian. Wazian says a use of force doesn't come down to the mens rea. It comes down to whether you have the understanding it's likely to apply the force. Not the knowledge, not the intent, not the purpose. And that is what has led three of the other circuits in this country to adopt that reasoning and apply it. And while I still have... Do you get any clue from the fact that we scheduled oral argument after Beckles to have you consider the case in light of Beckles and cases that were decided after the original oral argument in this case? Doesn't that give you a clue about maybe where we were after the original oral argument? I take your point, Your Honor. But I'm mindful... Judge Motz, I'm mindful of the fact that in June, after oral argument was calendared in this case, this court said... And I see I'm over my time. May I answer your question, Judge Motz? Sure. I'm conscious of what this court said about the exact same word in the misdemeanor crime and domestic violence provision, the word use, in a Supreme Court case, Castleton. The court applied the Supreme Court's decision in Castleman to, in that case, it was ACCA's force clause, and said, To be sure, Castleman did not construe ACCA's force clause, and it expressly reserved the question of whether the causation of bodily injury, a term defined broadly under Tennessee law, would necessitate violent force under Johnson's definition in ACCA. But the court's formal reservation does not foreclose application of the relevant aspects of its reasoning, which did not rest on any distinction between 922G9 and ACCA's force clause. That is subsequently decided authority of this court, that if you follow that case law, Boisian applies here. It must. It was interpreting the same word this court has already said is used interchangeably between the misdemeanor crime and domestic violence provision and the force clause of the guideline, the career offender guideline. So I take the court's questioning about some of these use of force things as an indication that it still may be worth discussing. Perhaps not, but I need to say that. Thank you. If there are no further questions, I would ask that the court not call this categorically violent crime by some other name. Thank you. Ms. Mason. Yes, Your Honor. First I'd like to point out that Boisian is all about recklessness. It is from beginning to end about recklessness. So even if you agree that the Boisian can be applied to the crime of violence definition, and there is a current circuit split on that issue, and of course we agree with the First Circuit's discussion in Bennett and Windley, it's all about recklessness. And this court has already specifically said in Vinson and in Peterson that North Carolina culpable negligence is less than recklessness. So we would argue that to adopt the government's position, you would have to overrule your decisions in Peterson and in Vinson. Because make no mistake, the government's argument about the force clause is going to result in North Carolina involuntary manslaughter also qualifying under the force clause because the government wants you to apply that. But the Sentencing Commission has already said involuntary manslaughter should not qualify. Well, maybe so, maybe not. I mean, I'm not sure that there's a parade of horribles. I would hope so. You seem to indicate that Boisian had almost no effect. And I think as my colleague has indicated, the decision did matter because it loosened the connection between the act and the men's rights. So, Your Honor. In crime of violence and jurisprudence. And that's important. No, Your Honor. I don't believe it did so. The Supreme Court was actually very, very careful to note in footnote four, we are not saying that our discussion here of recklessness necessarily applies to other force clause provisions. And this is something that Justice Scalia pointed out in the Johnson one. When he was talking about physical force, he was saying, look, all of these, this use of force in all of these statutes, the context matters. And that's why I would really recommend the First Circuit's discussion of this in Bennett, which I think is very thorough and thoughtful. First of all, in the misdemeanor crime of domestic violence provision, you're talking about a lesser degree of force. But I believe, to come back to Boisian, what Boisian holds is a conduct that involves a real risk of serious injury. And indifference to that risk. If you have that, then the force clause is satisfied. Now, the question I have is why this statute doesn't map on to what Boisian was saying. That is, it describes conduct that would, at a minimum, it seems to me, involve a real risk of serious injury. And, in fact, the whole statute is entitled inflicting serious injury. There's a reason that that statute was called what it is. And then it defines serious bodily injury. So if Boisian is saying conduct involving a real risk of serious injury and reckless indifference or purposeful indifference to that risk, the force clause is satisfied. And that seems to me, in Boisian, which I think is the most problematic part of your argument, of trying to circumnavigate that case, that this statute seems to map on to what Boisian was saying in 922 G9, or whatever it was. Because I don't understand how this serious injury could be inflicted without indifference to the risk of it. Your Honors, it's a different force clause. And the Supreme Court is talking about recklessness, which this Court has already held twice. The North Carolina culpable negligence is less than recklessness. So that's how we don't think Boisian applies to this case at all. But you've got another problem here, and that is there's just a dearth of actual cases charging under 1432A that involves a conviction on negligent grounds. And you've got two arguments to meet in that case. Number one, whether the North Carolina courts would even allow that. And number two, if culpable negligence is the standard, why isn't that above and beyond ordinary negligence and something that maps on to recklessness? So you've got those two different questions facing you. Your Honor, the reason why the government is so concerned about this assault question is that because North Carolina broadly applies this culpable negligence standard to all sorts of variety of assault offenses, and those we have listed in our brief. All sorts of different statutes. That may be, but those are different statutes. And sufficient unto the day. We've got a more limited question before us here. But I do think you have two problems. One is getting around Wasine, which I haven't seen happen. And the other is trying to convince us that this is an ordinary negligence statute or something like that. And I'm not convinced that it's not a recklessness statute, both by the way it's worded and by the North Carolina case law. And those are two pretty significant problems. And, Your Honor, I think the difficulty with your interpretation is that it is going to require this panel to overrule a number of its previous decisions. We are simply trying to apply faithfully the decisions that this court has made and faithfully apply North Carolina law, which says that assault can be committed through culpable negligence. We do have a Supreme Court there for a reason. We thank you very much. Thank you, Your Honor. We'll come down and read counsel and move to the next case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Albert Diaz